**REISSUED FOR PUBLICATION**
MAY 04 2021
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: March 30, 2021

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| RON RICHARDS *and* | * | UNPUBLISHED |
| SAMANTHA RICHARDS *on* | * | |
| *behalf of their minor child, C.L.H.R*, | * | No. 20-28V |
| | * | |
| Petitioners, | * | Special Master Nora Beth Dorsey |
| | * | |
| v. | * | Dismissal Decision; Influenza ("Flu") |
| | * | Vaccine; Seizures; Learning Disabilities; |
| SECRETARY OF HEALTH | * | Speech Disabilities; Statute of Limitations. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | * | |

Ron and Samantha Richards, pro se, Jefferson, OH, for petitioners.
Colleen C. Hartley, U.S. Department of Justice, Washington, DC, for respondent.

## **DECISION**[1]

### I.   INTRODUCTION

On January 9, 2020, Ron and Samantha Richards ("petitioners") filed a petition pursuant to the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012).[2]  Petitioners allege that their minor child, C.L.H.R., suffered from seizures as a result of an influenza ("flu") vaccination administered on November 23, 2015.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012).  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Petition at 1 (ECF No. 1); Medical Records, filed Mar. 26, 2020, at 2 (ECF No. 17) ("ECF No. 17"). Petitioners allege that C.L.H.R. "now suffers from learning disabilities and speech disabilities . . . because of the flu shot which caused his first seizure at 6 months of age, which triggered many more seizures since." Petition at ¶ 8.

Respondent filed a Motion to Dismiss in conjunction with his Rule 4(c) Report on August 28, 2020, stating, "this claim . . . was not filed within the statutorily prescribed limitations period set forth in Section 16(a)(2) of the Vaccine Act" and therefore should be dismissed. Respondent's Motion to Dismiss and Rule 4(c) Report ("Resp. Mot."), filed Aug. 28, 2020, at 2 (ECF No. 29).

Petitioners were given numerous extensions to file medical records and evidence to support petitioners' allegations. However, petitioners' repeated failure to follow court orders resulted in an Order to Show Cause to issue on January 4, 2021. Order to Show Cause dated Jan. 4, 2021 (ECF No. 37).

Based on the reasons set forth below and in the Show Cause Order dated January 4, 2021, the undersigned **DISMISSES** petitioners' case for failure to follow multiple court orders and prosecute their case and for failure to file a timely action pursuant to Section 16(a)(2) of the Vaccine Act.

## II.   PROCEDURAL HISTORY

Petitioners filed their claim on January 9, 2020, on behalf of their two children, C.H.L.R. and C.A.H.R. Petition at 1. Petitioners alleged their minor child, C.L.H.R., suffered from seizures as a result of a flu vaccination administered to him on November 23, 2015 and "now suffers from learning disabilities and speech disabilities . . . because of the flu shot which caused his first seizure at 6 months of age, which triggered many more seizures since." Petition at ¶ 8; ECF No. 17 at 2.

On January 15, 2020, the case was assigned to the undersigned. Notice of Reassignment dated Jan. 15, 2020 (ECF No. 9). An initial status conference was held on February 20, 2020, and the undersigned ordered the case be severed—C.H.L.R remained case number 20-28v and C.A.H.R. was to proceed under a new action, case number 20-28001v. See Order dated Feb. 21, 2020 (ECF No. 13). The undersigned issued an order on February 24, 2020, requesting C.H.L.R.'s birth records, a complete set of medical records from Dr. Douglas Fleck from birth to present, and a complete set of medical records from Ms. Kathleen Maxwell. Order dated Feb. 24, 2020, at 2 (ECF No. 14).

In March 2020, petitioners filed medical records. ECF No. 17; Medical Records, filed Mar. 23, 2020 (ECF No. 22) ("ECF No. 22"). Respondent filed a status report indicating additional medical records were needed to form respondent's position on April 27, 2020. Resp. Status Report ("Rept."), filed Apr. 27, 2020 (ECF No. 19). The undersigned held a status conference on June 23, 2020 to discuss petitioners' outstanding medical records and set a deadline for respondent's Rule 4(c) Report. See Order dated June 23, 2020 (ECF No. 25). The undersigned requested petitioners to file (1) vaccination record for the subject flu vaccination

2

administered to C.L.H.R. at six months of age; (2) C.L.H.R.'s medical records to support petitioners' allegation that C.L.H.R. suffers from seizures; and (3) all available medical records for C.L.H.R. prior to August 8, 2018, including, but not limited to C.L.H.R.'s neonatal, pediatric, and neurology evaluations.  Id.  On June 26, 2020, respondent filed a status report requesting additional medical records missing from the case.  Resp. Status Rept., filed June 26, 2020 (ECF No. 26).  The undersigned issued an order requesting the following records to be filed by August 28, 2020:

- C.L.H.R.'s records from "ACMC" emergency room in December 2015;
- C.L.H.R.'s records from Conneaut emergency room in 2017;
- C.L.H.R.'s records regarding a pediatric ICU admission for respiratory syncytial virus ("RSV");
- C.L.H.R.'s records from Dr. Brace;
- C.L.H.R.'s emergency room records for a febrile seizure in 2018;
- C.L.H.R.'s records from Dr. Suzanne Debrosee, clinical geneticist, or any other genetics specialist;
- C.L.H.R.'s records from a pediatric pulmonologist; and
- C.L.H.R.'s records from occupational, physical, and/or speech therapy

Order dated June 29, 2020 (ECF No. 27).  Petitioners' failed to meet this deadline.

On August 28, 2020, respondent filed a Motion to Dismiss with his Rule 4(c) Report.  Resp. Mot.  Respondent asserted that petitioners did not file their claim within the statutorily prescribed limitations period set forth in Section 16(a)(2) of the Vaccine Act.  Id. at 2.  Respondent stated,

> [a]ccordingly, the Petition must be dismissed even if all of the petitioners' allegations are accepted as true for the purpose of this Motion.  Moreover, petitioners have failed to demonstrate the extraordinary circumstances necessary to toll the Act's limitations period.  Finally, even if this case were timely filed, it is highly unlikely that petitioners would succeed on the merits of their case.

Id.  The undersigned issued an order on September 2, 2020, reiterating the previous request for medical records.  Order dated Sept. 2, 2020 (ECF No. 30).  Petitioners filed a response to respondent's motion on September 29, 2020 arguing against dismissal, stating they "are without any doubt that the flu shot is the cause of [C.L.H.R.'s] developmental delays."  Pet. Response to Resp. Mot. ("Pet. Response"), filed Sept. 29, 2020, at 1 (ECF No. 33).  Petitioners did not file

3

any additional medical records.³  As a result of petitioners' failure to comply with repeated orders to file necessary medical records, on January 4, 2021, the undersigned issued an Order to Show Cause, ordering petitioners to file medical records by March 5, 2021.  Order to Show Cause.  On March 11, 2021, petitioners filed a letter stating, "[petitioners] have filed [C.L.H.R.'s] complete medical records . . . [and petitioners] don't have any other medical records for him."  Letter, filed Mar. 11, 2021, at 1 (ECF No. 38).  Attached to the letter were two pages of previously filed medical records from appointments with Dr. Douglas Fleck on November 23, 2015 and December 15, 2015.  Id. at 2-3.

This matter is now ripe for adjudication.

## III.    FACTUAL SUMMARY

C.L.H.R. was born on February 11, 2015 with no neonatal complications or concerns.  ECF No. 22 at 76.  C.L.H.R. had well-child visits at one month, two months, and four months of age without problems or abnormalities noted.  Id. at 67-75.  He was given his first two series of Pediarix (diphtheria tetanus acellular-pertussis ("DTaP"), Hepatitis B, and polio ("IPV")), Haemophilus influenzae type B ("Hib"), RotaTeq, and pneumococcal vaccinations at his two month and four month visits.  Id. at 1-2.

On August 13, 2015, C.L.H.R. was seen for his six-month check-up by Dr. Douglas Fleck at Rainbow Madison Pediatrics.  ECF No. 22 at 64.  Dr. Fleck noted that C.L.H.R. was in overall good health and had "not had any serious prior vaccine reactions."  Id.  No acute illnesses were noted and C.L.H.R. had "age appropriate development."  Id.  He was given the third series of DTaP, IPV, Hib, RotaTeq, and pneumococcal, and his fourth Hepatitis B, vaccinations.  Id. at 1-2.  No flu vaccination was given at this appointment.

C.L.H.R. presented for a nine-month well child visit with Dr. Fleck on November 23, 2015.  ECF No. 22 at 61.  Dr. Fleck noted, "[p]atient has had prior vaccine reactions."⁴  Id.  Petitioners indicated that C.L.H.R. had a cough and Dr. Fleck made a notation to "add flu vaccine."  Id.  Dr. Fleck indicated C.L.H.R. was in good health.  Id.  C.L.H.R.'s development

---

³ See Order dated June 29, 2020 (ECF No. 27); Order dated Sept. 2, 2020 (ECF No. 30); Order dated Nov. 3, 2020 (ECF No. 34).  These orders requested (1) C.L.H.R.'s records from "ACMC" emergency room in December 2015; (2) C.L.H.R.'s records from Conneaut emergency room in 2017; (3) C.L.H.R.'s records regarding a pediatric ICU admission for respiratory syncytial virus ("RSV"); (4) C.L.H.R.'s records from Dr. Brace; (5) C.L.H.R.'s emergency room records for a febrile seizure in 2018; (6) C.L.H.R.'s records from Dr. Suzanne Debrosee, clinical geneticist, or any other genetics specialist; (7) C.L.H.R.'s records from a pediatric pulmonologist; and (8) C.L.H.R.'s records from occupational, physical, and/or speech therapy.

⁴ The records filed by petitioners do not explain Dr. Fleck's comment that C.L.H.R. had a "prior vaccine reaction."  The records do not identify the vaccination that caused a reaction, or state when the reaction occurred.  It is possible that Dr. Fleck intended to note that the patient had no prior vaccine reactions.

was noted as "age appropriate." Id.  At this visit, C.L.H.R. received the flu vaccination alleged to be at issue in this case.[5]  Id. at 2.  No adverse reaction was documented.

On December 15, 2015, C.L.H.R. presented to Dr. Fleck's office for follow up after a visit to an emergency room for influenza and febrile seizure.  ECF No. 22 at 58; ECF 38 at 3.  C.L.H.R. had tested positive for the flu and was being treated with Tamiflu.  Id.  During the visit, C.L.H.R. was still coughing and having nasal symptoms, but no fever.  Id.  In regard to C.L.H.R.'s seizure, Dr. Fleck noted, "[o]nset followed a febrile illness."  Id.  Petitioners reported that there was no family history of epilepsy.  Id.  Dr. Fleck's diagnoses were simple febrile seizure and flu A.  Id. at 60.  Dr. Fleck did not document any association between the flu vaccination, given on November 23, 2015, and C.L.H.R.'s febrile seizure.  However, Dr. Fleck did note an association between C.L.H.R.'s febrile illness and his seizure.  Id. at 58.

C.L.H.R. was seen for a one-year visit with Dr. Fleck on March 1, 2016.  ECF No. 22 at 55.  C.L.H.R. was given Hepatitis A, measles, mumps, and rubella ("MMR"), and Varicella vaccinations.  Id.  Dr. Fleck documented that petitioners "declined 2nd flu shot—had positive [flu] in [emergency department] earlier this winter."  Id.  Dr. Fleck noted that "[p]atient has not had any serious prior vaccine reactions."  Id.

C.L.H.R. presented to Dr. Fleck for his 15-month check-up on June 9, 2016.  ECF No. 22 at 52.  C.L.H.R. was overall in good health with "prior vaccine reactions."[6]  Id.  His development and growth were age appropriate and no active problems were listed.  Id. at 54.  He received a fourth DTaP, Hib, and pneumococcal vaccinations.  Id. at 1-2.

On August 16, 2016, C.L.H.R. saw Dr. Fleck for his 18-month visit.  ECF No. 22 at 49.  Dr. Fleck noted that C.L.H.R. was in good health without any serious prior vaccine reactions.  Id.  His development was age appropriate.  Id.  No active problems were listed.  Id. at 49-51.

On October 6, 2016, C.L.H.R. received a second flu vaccination, and on December 9, 2016, he received his third flu vaccination.  ECF No. 22 at 2.  No adverse reactions were noted.

On February 14, 2017, C.L.H.R. presented for his two-year visit with Dr. Fleck.  ECF No. 22 at 46.  Dr. Fleck noted, "[p]atient has not had any serious prior vaccine reactions."  Id.  C.L.H.R.'s active problem was noted as simple febrile seizure and his past medical history listed need for prophylactic vaccination and inoculation against flu and history of acute respiratory distress.  Id.

On March 14, 2017, C.L.H.R. presented to Dr. Fleck's office for a follow up from a recent visit to Conneaut emergency room for strep and fever.  ECF No. 22 at 40.  Dr. Fleck noted

---

[5] In the response to respondent's Motion to Dismiss, petitioners stated they thought C.L.H.R. received the flu vaccination at six months of age, but a review of the medical records confirm the vaccination was actually given at nine months of age.  Pet. Response at 1.

[6] It is unclear why Dr. Fleck sometimes documented prior vaccine reaction and other times stated there have been no prior (or no serious) vaccine reactions in C.L.H.R.'s patient history.

5

that C.L.H.R. left the hospital against medical advice and was taking amoxicillin. Id. C.L.H.R.'s active problems listed simple febrile seizure. Id. Dr. Fleck diagnosed him with acute streptococcal pharyngitis. Id. at 45.

C.L.H.R. presented to Dr. Fleck for speech difficulty and anemia on July 6, 2017. ECF No. 22 at 37. Dr. Fleck diagnosed expressive speech delay and referred C.L.H.R. to speech therapy for an evaluation. Id. at 39. This is the first time speech problems are documented in the medical records.

C.L.H.R. returned to Dr. Fleck for his two-and-a-half-year visit on August 14, 2017. ECF No. 22 at 33. His mother reported that she was concerned about C.L.H.R.'s hearing. Id. Dr. Fleck diagnosed sensory overload and recommended an occupational therapy evaluation for sensory issues. Id. at 35. Dr. Fleck also documented that C.L.H.R.'s active problems included a simple febrile seizure and speech delay. Id. at 33.

Petitioners brought C.L.H.R. to Dr. Fleck on September 5, 2017 for fever and acute wheezing. ECF No. 22 at 29. Dr. Fleck's impression was reactive airway disease and he prescribed Albuterol and acetaminophen as needed for pain and fever. Id. at 32. C.L.H.R.'s active problems were sensory overload, simple febrile seizure, and speech delay. Id. at 30.

C.L.H.R. returned to Dr. Fleck's office on November 13, 2017 for continued wheezing. ECF No. 22 at 23. Dr. Fleck documented his active problems as sensory overload, simple febrile seizure, and speech delay, and diagnosed him with acute asthma exacerbation and acute upper respiratory infection. Id. at 23, 27.

On February 12, 2018, C.L.H.R. presented to Dr. Fleck for his three-year visit. ECF No. 22 at 19. Petitioners were concerned about fluid in C.L.H.R.'s right ear and were planning to obtain a full hearing screen. Id. Dr. Fleck noted no concerns and documented that C.L.H.R was in good health. Id. Dr. Fleck also noted that C.L.H.R.'s behavior and development were age appropriate. Id. Active problems were listed as acute asthma, simple febrile seizure, sensory overload, and speech delay. Id.

On August 8, 2018, C.L.H.R. had a pediatric neurology evaluation at University Hospitals for "challenging behavior" with Kathleen Maxwell, APRN-CNS. ECF No. 17 at 2. Petitioners reported that C.L.H.R. was involved in "Help Me Grow" and planning to go to "Head Start" in the fall. Id. Petitioners attempted to get a hearing test for him, but C.L.H.R. had not cooperated. Id. Petitioners reported that C.L.H.R. had three febrile seizures: one at six months, one at 15 months, and the third at two years old.[7] Id. All of them occurred with a fever of 105 degrees. Id. at 2-3. C.L.H.R. had a family history positive for ADHD, seizures (maternal uncle), and bipolar disorder (paternal uncle). Id. at 5. The neurology assessment and diagnoses included global developmental delay, speech delay, and impulsivity. Id.

---

[7] No records of C.L.H.R.'s seizures were filed. Based on the medical records filed and his date of birth, it appears that C.L.H.R.'s seizures may have occurred approximately December 13, 2015, May 2016, and February 2017.

C.L.H.R. returned to the neurology services to see Ms. Maxwell on October 24, 2018. ECF No. 17 at 7.  C.L.H.R. was noted to have global development delay, language delay, and features of ADHD.  Id.  His parents removed him from preschool, but kept him enrolled in Head Start.  Id.  Petitioners reported he had a seizure at Head Start that was approximately three minutes in duration and that he was taken to the emergency room.  Id.  An EEG was done, and the findings were normal.  Id.  Petitioners reported that this was the first seizure he had without a fever.  Id.  C.L.H.R. was started on methylphenidate for ADHD.  Id. at 10.  Ms. Maxwell recommended beginning C.L.H.R. on treatment for seizures if he had another one.  Id.

On November 28, 2018, C.L.H.R. again saw Ms. Maxwell.  ECF No. 17 at 12. Petitioners reported that since starting methylphenidate, his teachers noted a change in his behavior, and they were pleased with his language progression.  Id.  C.L.H.R.'s hearing test was normal.  Id.  His diagnoses included global developmental delay, impulsiveness, and speech delay.  Id. at 15.  On December 10, 2018, C.L.H.R. received his fourth flu vaccination.  ECF No. 22 at 2.

On January 31, 2019, C.L.H.R. underwent a brain MRI with contrast.  ECF No. 17 at 16. The findings were unremarkable except for a small focus of gliosis[8] in the left frontal lobe.  Id. at 17.

C.L.H.R. saw Dr. Fleck for his four-year visit on February 14, 2019.  ECF No. 22 at 14. Overall, Dr. Fleck felt that C.L.H.R. was in good health.  Id.  Dr. Fleck noted that C.L.H.R. was scheduled for neurology and pulmonary testing later that month.  Id.  His active problems included global developmental delay, speech delay, seizure disorder, and acute sinusitis.  Id. at 14-15.  C.L.H.R. was started on antibiotics and given his fifth DTaP, second MMR and Varicella, and fourth IPV vaccinations.  Id. at 1-3, 17-18.

On February 27, 2019, C.L.H.R. presented to Ms. Maxwell.  ECF No. 17 at 18.  Ms. Maxwell noted C.L.H.R. had ADHD and seizures.  Id.  Petitioners reported that C.L.H.R.'s ADHD medication had a waning effect, and he was tolerating Keppra, an anticonvulsant, well.  Id.  Since starting Keppra he was seizure free.  Id.  C.L.H.R.'s diagnoses were global developmental delay, impulsiveness, seizure disorder, and speech delay.  Id. at 21.  Ms. Maxwell referred him to Medical Genetics Referral Evaluation and Treatment for global developmental delay and seizure disorder.  Id. at 21-22.

C.L.H.R. returned for a follow up for ADHD and seizures with Ms. Maxwell on May 22, 2019.  ECF No. 17 at 23.  Petitioners reported he switched to Adderall.  Id.  He continued to be seizure free.  Id.  At that time, C.L.H.R. was participating in occupational therapy, physical therapy, and speech therapy.  Id.  His diagnoses remained global developmental delay, impulsiveness, seizure disorder, and speech delay.  Id. at 26.

---

[8] Gliosis is an excess of astroglia.  Dorland's Illustrated Medical Dictionary 776 (33d ed. 2020). Astroglia are a collection of astrocytes, or "neuroglial cells of ectodermal origin, characterized by fibrous" processes.  Id. at 166.  Neuroglial cells (also called glial cells) are "the supporting structure of nervous tissue."  Id. at 1247.

During C.L.H.R.'s visit with Ms. Maxwell on September 25, 2019, petitioners reported that he might have had a partial seizure the prior week. ECF No. 17 at 28. Petitioners noted his lips twitched and he had right sided facial activity. Id. C.L.H.R.'s Keppra dosage was increased, and his Adderall medication was changed to Focalin. Id. at 32. Ms. Maxwell also noted he showed some elements of anxiety. Id.

On February 20, 2020, C.L.H.R. presented to Dr. Fleck for a five-year routine child health examination. ECF No. 22 at 4. Dr. Fleck reported C.L.H.R. was in overall good health. Id. at 6. He was assessed with anxiety, asthma, global developmental delay, impulsiveness, seizure disorder, sensory overload, speech delay, bilateral otitis media, and acute sinusitis. Id. at 4. C.L.H.R. was prescribed Amoxicillin. Id. Dr. Fleck noted that he had follow up appointments with neurology, pulmonology, and genetics. Id.

On February 26, 2020, C.L.H.R. saw Ms. Maxwell for a follow up appointment. ECF No. 17 at 33. He was taking Keppra twice per day, Zonegran, and Risperdal. Id. Petitioners reported that C.L.H.R. had a mild focal seizure the day before. Id.

## IV.     DISCUSSION

### A.     Failure to Prosecute

When petitioners fail to comply with undersigned's orders to prosecute their case, the undersigned may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl.Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed.Cir.1993) (table); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed.Cir.1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of case for failure of party to respond to discovery requests).

Petitioners' submitted medical records from two providers but failed to file additional requested medical records from C.L.H.R.'s numerous emergency room visits, genetics specialist, pediatric pulmonologist, and occupational, physical, and/or speech therapy. Despite repeated requests, the undersigned has no records supporting C.L.H.R.'s seizure activity beyond references by two providers noting when petitioners reported that C.L.H.R. had a seizure. Further, no records describing C.L.H.R.'s global development delay or sensory overload and speech delay were filed. C.L.H.R. was vaccinated on November 23, 2015 and his first seizure was approximately December 13, 2015, approximately twenty days later. While the undersigned cannot confirm the date of the seizure, based on the records that were filed, it does not appear that the seizure was related to vaccination due to the lack of temporal association with the vaccination. Further, the records provided show that the treating physician attributed the seizure to a febrile illness. The physician did not suggest any there was any association with the alleged vaccine.

Petitioners failed to file complete medical records in response to the Order to Show Cause, dated January 4, 2021, despite having been given several extensions. They did file a

8

letter stating all medical records have been filed.  However, the records that have been filed are not complete, and they do not show any basis for compensation.  Petitioners have now had over one year to file the requested medical records, and have failed to do so, or failed to explain why they have been unable to file them.[9]  Therefore, the undersigned finds it appropriate to dismiss the case for failure to prosecute.

### B. Applicable Statute of Limitations in the Vaccine Program

Section 16(a)(2) of the Vaccine Act governs claims resulting from vaccines administered after October 1, 1988.  The statute of limitations contained in the Act reads:

> if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

§ 16(a)(2).  Thus, the statute of limitations begins to run from the onset of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis.  Carson v. Sec'y of Health & Hum. Servs., 727 F.3d 1365, 1369 (Fed. Cir. 2013).  Special masters have appropriately dismissed cases that were filed outside the limitations period, even by a single day or two.  See, e.g., Spohn v. Sec'y of Health & Hum. Servs., No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond the thirty-six-month limitations period), aff'd, 132 F.3d 52 (Fed. Cir. 1997); Cakir v. Sec'y of Health & Hum. Servs., No. 15-1474V, 2018 WL 4499835, at *4 (Fed. Cl. Spec. Mstr. July 12, 2018).

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act claims in limited circumstances.  See Cloer v. Sec'y of Health & Hum. Servs., 654 F.3d 1322, 1340-41 (Fed. Cir. 2011).  Section 16(a)(2) allows courts to forgive untimely claims in "extraordinary circumstances."  Cloer, 654 F.3d at 1344 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  However, the Federal Circuit has specifically stated that "equitable tolling under the Vaccine Act due to unawareness of a causal link between an injury and administration of a vaccine is unavailable" as a tolling mechanism.  Id. at 1345.

Additionally, § 11(b)(1)(A) provides that "the legal representative" of an injured person who is a "minor . . . may . . . file a petition for compensation under the Program."  § 11(b)(1)(A).

---

[9] For Vaccine Program cases that have been dismissed for failure to respond to an Order to Show Cause, see Byrd v. Sec'y of Health & Hum. Servs., 778 F. App'x 924 (Fed. Cir. 2019); Ghasemipor v. Sec'y of Health & Hum. Servs., No. 20-17V, 2020 WL 7497878 (Fed. Cl. Spec. Mstr. Nov. 23, 2020); Flores v. Sec'y of Health & Hum. Servs., No. 20-157V, 2020 WL 5798502 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Villalobos ex rel. A.D. v. Sec'y of Health & Hum. Servs., No. 20-96V, 2020 WL 5797865 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Palencia ex rel. C.A.P. v. Sec'y of Health & Hum. Servs., No. 20-180V, 2020 WL 5798504 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Button ex rel. W.S.B. v. Sec'y of Health & Hum. Servs., No. 16-1391V, 2017 WL 2876099 (Fed. Cl. Spec. Mstr. June 5, 2017).

Section 33(2), in turn, defines the term "legal representative" as a "parent or an individual who qualifies as a legal guardian under State law." § 33(2). In the Program, a "parent" qualifies as a "legal representative" who is legally authorized to file a petition under the Vaccine Act. See Kennedy v. Sec'y of Health & Hum. Servs., 99 Fed. Cl. 535, 541 (2011), aff'd, 485 F. App'x 435 (Fed. Cir. 2012).

### C. Issue of Timeliness

As set forth above, the statute required petitioners to file their claim on behalf of C.L.H.R. under the Vaccine Act within 36 months of the onset of the earliest symptom or manifestation of an injury. See Markovitch v. Sec'y of Health & Hum. Servs., 447 F.3d 1353, 1357 (Fed. Cir. 2007) (holding that "either a 'symptom' or a 'manifestation' of onset of a vaccine-related injury is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large").[10]

The petition was filed on January 9, 2020. In order for petitioners' vaccine claim to be timely, C.L.H.R. would have had to experience the initial onset of his vaccine-related injuries, as pled in the petition, on or after January 9, 2017. Any claims for injuries prior to January 9, 2017, are time-barred.

C.L.H.R. received the flu vaccination at issue on November 23, 2015. Petition at 1; ECF No. 22 at 2. The petition alleges that C.L.H.R. developed seizures around the same time he was vaccinated with the flu shot. Petition at 1. Petitioners took C.L.H.R. to the emergency room after his initial seizure. He then presented to Dr. Fleck on December 15, 2015 for a follow up after the emergency room visit. ECF No. 22 at 58. Based on Dr. Fleck's medical records, C.L.H.R. had a seizure approximately December 13, 2015. Thus, the onset of his seizure disorder was the date of C.L.H.R.'s initial seizure, approximately December 13, 2015, and the petition should have been filed within 36 months of that date, by December 13, 2018.

Petitioners have the burden of establishing that their claim was filed within the applicable statute of limitations. They have failed to provide evidence that their petition was filed within "36 months after the date of occurrence of the first symptom or manifestation of onset . . . of such injury" as required by the Vaccine Act. § 16(a)(2). Because seizure onset was in 2015, and the petition was not filed until 2020, the undersigned finds it appropriate to dismiss the case for failure to timely file the petition.

Petitioners alleged that C.L.H.R. "now suffers from learning disabilities and speech disabilities . . . because of the flu shot which caused his first seizure at 6 months of age." Pet. Response at 1. Based on the records provided, C.L.H.R. was diagnosed with speech delay on July 6, 2017 and with sensory overload on August 14, 2017. As alleged, these injuries were

---

[10] For cases that have been dismissed for failure to file within the prescribed statute of limitations, see Villalobos ex rel. A.D., 2020 WL 5797865; Palencia ex rel. C.A.P., 2020 WL 5798504; Edoo v. Sec'y of Health & Hum. Servs., No. 13-302V, 2014 WL 1381341 (Fed. Cl. Spec. Mstr. Mar. 19, 2014); Boettcher v. Sec'y of Health & Hum. Servs., No. 17-1402V, 2018 WL 2925043 (Fed. Cl. Spec. Mstr. May 2, 2018).

10

caused by the initial seizure, which occurred approximately December 13, 2015, and thus, they are also time-barred. Further, petitioners have failed to substantiate that these conditions are vaccine related due to their failure to respond to provide medical records and otherwise respond to the Order to Show Cause. Moreover, the petitioners also did not claim equitable tolling.

## V.     CONCLUSION

Accordingly, for all the reasons stated above, this case is dismissed for insufficient evidence, for failure to prosecute, and failure to timely file the petition within the statute of limitations. In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master
